CHARLES G. KINNEY
5826 Presley Way
Oakland, CA 94618
(510) 654-5133
FAX (510) 594-0883
charleskinney@hotmail.com

Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES KINNEY,           )<br>        Plaintiff,          )<br>                              )<br>vs.                           )<br>                              )<br>STATE BAR OF            )<br>CALIFORNIA            )<br>and DOES 1 to 10,       )<br>        Defendants.        )<br>_____) | Case No. 3:16-cv-02277<br><br><br><br><br>**COMPLAINT**<br><br><br><br>Jury Trial Demanded |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiff CHARLES KINNEY ("Kinney") submits his civil antitrust complaint against defendants STATE BAR OF CALIFORNIA ("State Bar") and DOES 1 to 10 (collectively "defendants") under the Sherman Act [15 U.S.C. Secs. 1 et seq.], the Clayton Act [15 U.S.C. Secs. 12 et seq], and/or Goldfarb v. Virginia State Bar (1975) 421 U.S. 773 (the "Goldfarb case").

PARTIES

1.  CHARLES KINNEY ("Kinney") was at all relevant times an individual who maintains a principal place of residence within the County of Alameda, California, and within the judicial district of this Court. Kinney has been a member of the State Bar

Complaint                                                1

since 1975, was issued State Bar number 66428, and has had his Oakland address in Alameda County listed as the office for his sole-proprietorship legal business since 1991.

2. STATE BAR OF CALIFORNIA ("State Bar") is a "public corporation" created by the Cal. Constitution, Article VI, Sec. 9, with an office in San Francisco, California; and the constitutional "members" of the State Bar are the attorneys who practice law in this state (except while holding office as a judge in a court of record).

## NATURE OF THE ACTION

3. The State Bar is a "unified" or mandatory bar which means that attorneys, including Kinney, must belong to the State Bar in order to practice law in this state.

4. The State Bar contends it is an "administrative arm" of the Cal. Supreme Court, but nothing in the Cal. Constitution states those words.

5. The State Bar conducts various regulatory functions including discipline of the members, but the Cal. Supreme Court ultimately has the responsibility for discipline of its members; see Cal. Business & Professions Code ("B&P") Sec. 6087.

6. When conducting discipline, the State Bar has the "protection of the public" as its "highest priority" and, when there is a conflict of interest or inconsistent interests, "protection of the public" is the State Bar's "paramount" interest; see B&P Sec. 6001.1.

7. The State Bar must follow certain procedures when disciplining a member including those specified in B&P Secs. 6075 et seq., and/or Cal. Rules of Court ("CRC"), Rules 9.1 et seq., which were not followed with respect to the discipline of Kinney.

8. For more than 10+ years, the State Bar has had a "State Bar Court" which conducts disciplinary functions [see B&P Sec. 6086.5] and a "Chief Trial Counsel" [see B&P Sec. 6079.5]; those were involved with respect to the discipline of Kinney.

9. There are 33 unified bars in the U.S., and only 18 voluntary bars.

10. Just as in California, the State of Virginia has a "unified" bar. The Virginia State Bar was the subject of the Goldfarb case; that ruling also applies to California.

Complaint                                    2

11. In the Goldfarb case, the Virginia State Bar had a "suggested minimum fee schedule" (i.e. a list) for specific services to be charged by lawyers and, if a lawyer didn't charge those fees for services, it raised "a presumption that such lawyer is guilty of misconduct". Id. at 777-778. In other words, the "fee schedule was enforced through the prospective professional discipline from the State Bar". Id. at 781. The U.S. Supreme Court held that "interstate commerce" was being "sufficiently affected" by this practice. Id. at 785. The U.S. Supreme Court held that the Sherman Act included "the sale of services". Id. at 787. The U.S. Supreme Court held that this practice was not exempt under the "so-called state-action exemption". Id. at 788. The legislature of Virginia "has authorized its highest court to regulate the practice of law" (just like in California). Id. at 789. The U.S. Supreme Court held that any "anticompetitive activities must be compelled by direction of the State acting as a sovereign". Id. at 791. The U.S. Supreme Court held that the State Bar of Virginia could not allow or foster "anticompetitive practices for the benefit of its members". Id. at 791. The U.S. Supreme Court held that the State Bar of Virginia had "joined in what is essentially private anticompetitive activity" by providing that any deviation from the suggested fee schedule may lead to "disciplinary action" (e.g. an attorney could be disbarred by the Virginia State Bar), which was subject to the "reach of the Sherman Act". Id. at 791-792.

12. In California, there has been and still is a list of vexatious litigants compiled by the Cal. Administrative Office of the Courts for at least 10 years. That vexatious litigant list has non-attorneys and attorneys on it who meet the criteria found in Cal. Code of Civil Procedure Secs. ("CCP") 391 et seq. After one is named on that list, one needs permission before one can file new litigation or maintain existing litigation.

13. On Nov. 19, 2008, Kinney was added to that vexatious litigant list because of Judge Luis Lavin's order in Los Angeles County Superior Court Case No. BC374938. However, Judge Lavin no longer had subject matter or personal jurisdiction over Kinney as of Nov. 7, 2008 due to Kinney's voluntary dismissal of himself as a co-plaintiff in that

Complaint                                    3

case under CCP Sec. 581.  Under CCP Sec. 391.2, any finding that one is a vexatious litigant is not a decision on the merits of the underlying case.  However, several "judges" and "justices" in California have: (a) ignored Kinney's voluntary dismissal in BC374938 including Cal. Administrative Presiding Justice Roger Boren; (b) denied appeal rights and/or other rights held by Kinney as an aggrieved nonparty and the attorney for the remaining party Kimberly Kempton in BC374938 based on the Nov. 19, 2008 decision; (c) acted as if an unsigned tentative ruling issued by Judge Lavin on Oct. 27, 2008 [which required the preparation of an order] was the same as the Nov. 19, 2008 decision; and/or (d) denied rights held by Kinney in other pending and/or new cases.

14.  The Nov. 19, 2008 decision against nonparty Kinney is on the vexatious litigant list with no mention of his dismissal as a "party" on Nov. 7, 2008, so that vexatious litigant entry on the "list" is misleading as to Kinney.  This was the first time Kinney ever appeared on the vexatious litigant list.

15.  Prior to Jan. 1, 2012, the only way to get onto that list was under CCP Sec. 391 et seq. by actions of a "judge" or "presiding judge" in the Cal. Superior Courts.  CCP Sec. 391 et seq only applied to those litigants were "in propria persona" (i.e. who represented themselves as a plaintiff or cross-complainant in litigation).

16.  Prior to Jan. 1, 2012, the terms "judge" and "presiding judge" only included judicial officers in the Superior Courts of California, but did not include any "justices" in the California Courts of Appeal (e.g. Adm. Pres. Justice Boren).

17.  As of Jan. 1, 2012, the law changed so that a "presiding justice" could also conduct a procedure under CCP Secs. 391 et seq. whereby that "presiding justice" could cause a non-attorney or an attorney to be included on the list.  The law was changed by Cal. Senate Bill 731 (2011-2012 Regular Legislative Session) which amended CCP Sec. 391.7 to add the words "presiding justice" to the existing words "presiding judge", but that change was only effective as of Jan. 1, 2012.

18. As of Jan. 1, 2012, there were approximately 80 persons on the vexatious litigant list who had never been found to be a vexatious litigant by the acts of a "judge" or "presiding judge", but instead were on that list by the acts of one or more "justices".

19. On Dec. 8, 2011, Administrative Presiding Justice Roger Boren authored <u>In re Kinney</u>, 201 Cal.App.4th 951, against Kinney during an appeal in which Kinney was not a party in the underlying case or the appeal (i.e. he was not an "in propria persona" litigant), but instead was only the attorney for a party named Kimberly Kempton. That decision was reached without a trial or hearing on the merits, but instead was initiated by an order to show cause issued by Adm. Pres. Justice Boren during the appeal.

20. As a result of <u>In re Kinney</u>, Kinney was added to the vexatious litigant list. This was the second time Kinney's name appeared on that list. As noted herein, Adm. Pres. Justice Boren did not have the authority to author <u>In re Kinney</u> (after issuing a order to show cause in an appeal in which Kinney was not a party). As noted herein, no "justice" could cause Kinney to be included on the vexatious litigant list at any time during Dec. 2011, but no court has addressed that jurisdictional issue.

21. In Oct. 2012, the State Bar filed disciplinary charges against Kinney based in part on Kinney's inclusion in the vexatious litigant list (e.g. based in part on <u>In re Kinney</u>). It is also believed the State Bar filed those charges against Kinney because Kinney had been identified as an attorney who was willing to sue judicial officers (e.g. in one of the Van Scoy cases in the late 1990s, more than 7 years before 2008 which is outside of the proscribed time period in CCP Secs. 391 et seq); and/or because Cal. Adm. Pres. Justice Boren and/or other "justices" needed an attorney, not just an "in propria persona" litigant, to be labeled a vexatious litigant since legislation to amend CCP Secs. 391 et seq to add such a provision had recently failed to pass. Each of these events resulted in Kinney being on a "list" of some kind (e.g. the vexatious litigant list).

22. Since Kinney was now on the "list", the State Bar and/or other defendants named herein had decided to subject Kinney to discipline simply because Kinney was on

the "list". That discipline of Kinney by the State Bar was not "compelled by direction" of the Cal. Supreme Court; was not exempt under the "so-called state-action exemption"; was fostering "anticompetitive practices for the benefit" of certain competitors of Kinney (e.g. opposing attorneys in pending cases conducted by Kinney); and was a "private anticompetitive activity" that was being enforced by "disciplinary action" initiated by defendants and each of them against Kinney, all of which was contrary to <u>Goldfarb v. Virginia State Bar</u> (1975) 421 U.S. 773, 777-792.

23.   In April 2013, the State Bar Court commenced a tribunal hearing against Kinney based on those disciplinary charges.

24.   In April 2013, at the tribunal before the State Bar Court, the State Bar prosecutors simply requested judicial notice of a variety of ongoing court cases (in over 20 binders), some of which cited <u>In re Kinney</u>, and then rested the case-in-chief.

25.   Kinney objected to using judicial notice to prove the "clear and convincing evidence" burden imposed on the State Bar, and moved for dismissal. The State Bar Court denied that motion. Kinney then proceeded to put on a defense.

26.   Kinney's defense included the failure of the State Bar to follow its own procedures and state law (e.g. State Bar's failure to obtain oaths from the 2 complaining persons), and showed that each of Kinney's litigations had merit or were still pending so merit couldn't yet be determined. There had been no complaint by any of Kinney's clients. There had been no misconduct of any kind by Kinney. The discipline process was allegedly based on complaints by 2 persons (i.e. 2 disgruntled defendants in cases that had been filed by Kinney), who never signed any verification or oath to support their charges. The discipline process ignored that <u>In re Kinney</u> had been issued in Dec. 2011.

27.   In 2013, the State Bar Court, Hearing Department, recommended a 3 year suspension of Kinney. After an appeal by Kinney, the State Bar Court, Review Department, recommended disbarment of Kinney in 2014. Kinney petitioned to the Cal. Supreme Court who has not yet acted on that petition and who can deny that petition

without a review of any kind, thereby making the State Bar Court's disbarment recommendation for Kinney a binding judicial decision.

28. The "list" which resulted in the discipline of Kinney is similar to the fee schedule in the Goldfarb case. That "list" is a private anticompetitive activity being enforced by the State Bar via disciplinary actions. That list includes about 80 persons (including Kinney) who were listed prior to Jan. 1, 2012, but who should have never been on that list because the "justice" who placed them on that list did so without Legislative authority. The "list" and the actions of the State Bar and other defendants herein amount to private anticompetitive activity subject to the Sherman Act. The "list" and the actions of the defendants have allowed and fostered anticompetitive practices and the restraint of trade and commerce for the benefit of the competitors (e.g. opposing counsel; opposing parties) of Kinney.

29. The In re Kinney decision is also similar to the fee schedule in the Goldfarb case. In re Kinney is void-on-its-face because neither a "justice" nor "presiding justice" had authority to make Kinney a vexatious litigant under CCP Secs. 391 et seq. and specifically under Sec. 391.7 in Dec. 2011.

30. The inclusion of Kinney on the vexatious litigant list (e.g. by In re Kinney) without legal authority, coupled with the State Bar's disciplinary action to suspend or disbar Kinney based on his inclusion in that list, is a "private anticompetitive activity" subject to the Sherman Act, which is what occurred in the Goldfarb case.

31. The acts of the defendants and each of them were done, in part, to deprive Kinney of the ability to conduct his law practice, to pursue his interstate commerce activities, to pursue his own claims, and/or to pursue the claims of his clients.

32. The acts by the defendants and each of them were done, in part, to benefit to Kinney's competitors (e.g. other attorneys and/or other parties opposing Kinney or his clients) in ongoing cases and in future matters. As a result of these acts, Kinney's

competitors have gained an unfair advantage, profited to the detriment of Kinney and his clients, and/or restrained interstate trade and/or commerce.

33.  As for In re Kinney, the three main examples cited in In re Kinney involved public benefits in addition to benefits to Kinney and/or his clients.  The first of those three cases involved pollution of the ocean in Laguna Beach, contrary to the Clean Water Act.  The second of those three cases involved obstructions built in the public right-of-way in Los Angeles, contrary to the ADA law.  The third of those three cases involved protection of a perennial stream in El Dorado County by requiring any construction to occur outside of the required 100 foot buffer zone.  Each of those three cases, if Kinney had been allowed to continue, could have resulted in a "protection of the public" benefit, but the State Bar's action prevented Kinney from pursuing each of those matters (e.g. because the State Bar's action resulting in Kinney become an "involuntary inactive" member who could not practice law from about Dec. 15, 2014 onward), contrary to the "paramount" duty imposed upon the State Bar under B&P Sec. 6001.1.

34.  For many years, Kinney's law practice has included parties that he represented in California, but who lived outside of California, and/or claims being pursued by Kinney in other states on behalf of California and/or out-of-state clients, so Kinney was involved in providing legal services in interstate commerce.  In addition, for many years, Kinney has had property interests in California and out-of-state.

35.  Kinney is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 to 10; and will seek leave to amend the operative complaint to show such true names and capacities when the same are ascertained.

36.  Kinney is informed and believes and thereon alleges that each of the defendants was negligently responsible and/or was liable in some manner for the occurrences herein alleged; that Kinney's injuries and damages as herein alleged were proximately caused by defendants' negligence and/or acts (regardless of whether those

acts were done intentionally, done willfully, and/or done with reckless disregard); and that Kinney's damages now exceed $1,000,000.

37. Kinney is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants was acting as an individual or as the agent and/or employee of the remaining defendants and in doing the things herein mentioned was acting within the scope of its authority as such agent and/or employee, and with the permission and consent of its co-defendants.

## JURISDICTION AND VENUE

38. Jurisdiction and venue for the within action are properly within the jurisdiction of this Court because defendants and/or each of them have offices, transact business, and/or reside in this judicial district; see 15 U.S.C. Sec. 22 and/or 28 U.S.C. Sec. 1331 and/or 1391. Defendants and each of them have committed acts which have violated the Sherman Act and injured Kinney in this judicial district during the last 4 years; see 15 U.S.C. Sec. 15(b).

39. The acts by the defendants and each of them (which arose in part because of improperly including Kinney twice on the vexatious litigant list) have reduced competition, have resulted in adverse consequences to interstate commerce, and have resulted in a restraint of trade and/or commerce to the detriment of Kinney, his California property interests, his out-of-state property interests, and/or his clients.

## TRADE, COMMERCE AND VIOLATIONS ALLEGED

40. There are many examples of reduced competition, adverse consequences to interstate commerce, and/or restraint of trade and/or commerce to the detriment of Kinney, his property, and/or his clients. As one example, Kinney's competitors City of Los Angeles and attorney Peter Langsfeld, a deputy city attorney for the City of Los Angeles, in a case involving a private homeowner's obstructions placed in the public right-of-way which abutted Kinney's property and Kinney's client's property, were not required to have those obstructions removed, contrary to the ADA, <u>Kempton v. City of</u>

Los Angeles, 165 Cal.App.4th 1344, 1347-1348 (Cal. 2008), and Fortyune v. City of Lomita, 766 F.3d 1098, 1101-1106 (9th Cir. 2014); that public right-of-way obstruction exists to this day.  As another example, Kinney's competitors Three Arch Bay Community Services District (an MS4 discharger and governmental entity) and their attorneys, in a case involving surface runoff pollution of the ocean which went across Kinney's property and flooded Kinney's neighbor (a client), were not required to stop polluting the ocean, contrary to the Clean Water Act; that surface runoff pollution occurs to this day any time a medium or heavy rainstorm occurs in the area.  As another example, attorneys David Marcus and Eric Chomsky have extorted attorney's fees and court costs from nonparty Kinney as part of their continuing acts in BC374938 from 2009 onward (e.g. in July 2012) even though Kinney was no longer a party in that case and even though their client Michele Clark declared Chapter 7 bankruptcy in 2010.

  41. Kinney seeks damages, injunctive and declaratory relief, and other remedies for violations of the Sherman Act; see 15 U.S.C. Secs. 1 and 4.

  42. Defendants and each of them have violated and are continuing to violate the Sherman Act to the detriment of Kinney, his property rights and/or his clients' rights.

  43. The antitrust violations by defendants and each of them are the proximate cause of the detriment to Kinney, his property rights and/or his clients' rights; and, but for the antitrust violations of defendants and each of them, that detriment would not have occurred.  The injury and detriment caused by defendants and each of them have a direct adverse impact on Kinney, his property rights (including his out-of-state properties and his law practice) and/or his clients' rights; have a real and continuing risk of duplicative injuries; and, because of the far-reaching detriments to Kinney and resulting benefits to Kinney's direct competitors (e.g. attorneys opposing Kinney's clients; clients opposing Kinney's position), will have problems if damages are apportioned.

  44. None of the acts of defendants as herein alleged are authorized by law, and none are immune from the Sherman Act.

FIRST CAUSE OF ACTION [Restraint of Trade or Commerce]

45. Kinney refers to and incorporates paragraphs 1 to 44 above.

46. The acts of defendants and each of them have violated the Sherman Act.

47. The acts of defendants and each of them have proximately caused detriment to Kinney, his property (e.g. inside and outside California) and/or his clients, and at the same time improperly benefitted Kinney's competitors and restrained trade and interstate commerce.

DEMAND FOR JURY TRIAL

48. Kinney hereby demands a jury trial in this matter.

PRAYER FOR RELIEF

WHEREFORE, Kinney prays for judgment against the defendants, and each of them, as follows:

1. For general and special damages according to proof and allowed by law;

2. For a declaration of rights, duties, and obligations regarding issues herein;

3. For interest if allowed by law;

4. For temporary and/or permanent declaratory, injunctive relief and/or equitable relief regarding the matters herein alleged;

5. For costs of suit herein incurred; and

6. For other and further relief as this Court may deem proper.

Dated: ___4/27____, 2016     __/s/___Charles Kinney__
                              Charles G. Kinney

VERIFICATION

I, the undersigned, declare:

That I am the plaintiff in foregoing action; that I have read the foregoing document entitled COMPLAINT, and know the contents thereof; that the same is true of my own

knowledge, except as to those matters set forth upon my information and belief, and as to such matters that I believe it to be true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that it was executed on April 27, 2016, at Oakland, California.

                                      __/s/__Charles Kinney___
                                      Charles Kinney